JOHN B. LEWIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26118.   Promulgated May 19, 1930.

*J. F. Armstrong*, *Esq.*, for the petitioner.

*J. L. Backstrom*, *Esq.*, and *P. A. Sebastian*, *Esq.*, for the respondent.

OPINION.

TRUSSELL: The first issue is purely a fact question which arose due to erroneous bookkeeping, and which has been settled by the parties through stipulation. The increase, $2,353.20, in the cost of goods sold during the taxable year should be allowed in computing the gross income.

The second issue relates to certain deductions claimed by the petitioner but disallowed by the respondent. The petitioner was accustomed to acquire from time to time foreign credits for use in paying in foreign money for its foreign purchases. During 1921 and 1922 he purchased in this country for United States money certain checks drawn upon financial institutions in Germany and payable in marks upon presentation. In another transaction in 1922 he placed to his credit in an open deposit account in a German bank an amount of marks which was repayable in marks. We are satisfied that these transactions were purely incidental to the business of the petitioner, and they were neither investments nor speculations. During 1922 the petitioner ascertained to his satisfaction that the checks and the bank account were practically worthless, due to the enormous depreciation of the German mark and the then apparent improbability of any return of value. The cost thereupon was charged off to profit and loss within the taxable year 1922.

There is no dispute over the fact of ultimate loss or of the amount, and the respondent now admits that the deduction should be allowed, but claims it should be allowed in 1923 rather than in 1922.

There is considerable argument between the parties of the question of law whether the deductions are allowable as "bad debts" or as "losses," the point involved being that with respect to bad debts the statute allows a partial write-off where ascertained to be worthless in part, and locates the allowance of the deduction within the year in which ascertained and charged off; on the other hand, losses are deductible only in the year in which sustained. See section 214 (a) (4) (5) and (7) of the Revenue Act of 1921. The respondent offers a number of citations of cases wherein the losses claimed were required to be determined by closed transactions or there was a lack of satisfactory proof of worthlessness, or, in some of the cases, the court had under consideration provisions of the Revenue Act of 1918 which failed to include an allowance of partial worthlessness of bad debts. Because of our findings of fact, we do not think that these decisions are controlling here. We are satisfied that the petitioner believed at the end of 1922 that the cost of the checks and the bank deposit was definitely lost and he then determined to abandon the assets as worthless. We think he had a satisfactory basis for his conclusion and was justified in consistently charging off the cost to profit and loss. We do not think that the amount of depreciation which the mark had suffered by the end of 1921 (the previous year) was sufficient to justify a partial deduction at that time; furthermore, it is admitted by the respondent that the value of the mark was fluctuating up and down at that time. At the end of 1922, however, the depreciation of the mark had reached tremendous proportions, apparently without hope of recovery, and we see no reason for a further deferment of the charge-off.

Under the circumstances, then, the losses were definitely and satisfactorily determined at the end of 1922, and being sustained within 1922, ascertained within 1922, and actually charged off within 1922, they are properly allowable deductions from income whether one chooses to ticket them as "bad debts" or as "losses." The deduction claimed by the petitioner should be allowed in 1922.

In the remaining issue we are required to give consideration to a claimed deduction which relates to an undisputed bad debt. The original amount of the debt and the small amount ultimately recovered thereon are in evidence, and are not in controversy. The question for decision is whether the petitioner ascertained the debt to be worthless in 1922 and, also, whether the bookkeeping procedure which he followed effected a charge-off within the taxable year as required by section 214 (a) (7) of the Revenue Act of 1921. We are satisfied that the debtor made an assignment of its assets, whereupon they were inventoried, and it is probable that the petitioner at that time ascertained that the account was only recoverable in a very small part. The evidence, however, leaves us uncertain whether this as-

certainment occurred in 1921 or in 1922. The books do not help in this respect, for at the end of 1921 a portion of the account was transferred to a general ledger account headed "Doubtful Accounts Receivable." At the end of 1922 the balance of the debt was similarly transferred. Without further complications it would be practically impossible to decide upon the evidence whether the bad debt deduction was allowable (1) in part in 1921, or (2) all allowable in 1922, save the amount recovered. Unfortunately, there is a further difficulty—upon a careful consideration of the evidence we think that the petitioner failed to actually charge off the debt within either of the taxable years. The general manager for the petitioner testified that the account headed "Doubtful Accounts Receivable" had originally been opened under the name of "Bad and Doubtful Accounts Receivable," and that he considered the account to have no value whatever. On the other hand, it is freely admitted by the petitioner that the account was treated upon the books and in his financial statements as having asset value. It appears that the amount of the account was excluded from net worth in computing commissions payable to employees out of net profits, but this may be construed as merely a reservation by the parties. The provision that the bad debt must be charged off definitely within the taxable year is statutory, and may not be waived. It is clearly shown that the debt was not specifically charged off directly to profit and loss until 1925; furthermore, while we know that an amount of $220.18 was ultimately recovered, we do not know from the evidence when this recovery was made. Under all of these uncertainties and reservations we are of opinion that the deduction claimed may not be allowed in either 1922 or 1923.

*Judgment will be entered pursuant to Rule 50.*